# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **STEVEN HUNTER, et al,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Case No.: 4:14-CV-114-VEH |
| | ) |
| **W. HAL SHEPHERD, et al,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

On December 21, 2013, the plaintiffs, Steven Hunter, Christy Hunter, and Steven Hunter, Jr. (collectively "the Hunters"), filed this civil action in the Circuit Court of St. Clair County, Alabama. (Doc. 1-1 at 13). The complaint named as defendants W. Hal Shepherd, Ed Thomason, The Kennion Group, Inc. ("Kennion Group"), Academic Benefit Trust Corporation ("Academic Benefit"), Preferred Health Alliance Corporation ("Preferred Health"), Planned Benefit Services, Inc. ("Planned Benefit"), and the Alabama High School Athletic Association ("AHSAA"). (Doc. 1-1 at 13). All counts of the complaint arise out of an injury that Tanner Hunter received while participating in an athletic event at his high school, and a claim for benefits that he and Steve and Christy Hunter, his parents, made for benefits under

an allegedly applicable insurance policy or policies. (Doc. 1-1 at 15-17). The complaint sets out claims under Alabama law for "Contract & Fiduciary Breach" (Count One), Fraud (Count Two), Negligence/Wantonness (Count Three), Outrage (Count Four), Bad Faith (Count Five), and Illusory Contract (Count Six). (Doc. 1-1 at 17-23).

On January 17, 2014, the defendants removed the action to this court. (Doc. 1). The case is before the court on the plaintiffs' motion to remand. (Doc. 12). For the reasons stated herein, the motion will be **GRANTED**, and this case will be **REMANDED** to the Circuit Court of St. Clair County, Alabama.

## I. STANDARD FOR REMAND

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the Defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See, City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[b]ecause removal jurisdiction raises significant federalism

concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.") (citation omitted).

"In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (citation omitted); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001).

> That burden goes not only to the issue of federal jurisdiction, but also to questions of compliance with statutes governing the exercise of the right of removal. *Albonetti v. GAF Corporation-Chemical Group,* 520 F.Supp. 825, 827 (S.D. Texas 1981); *Jennings Clothiers of Ft. Dodge, Inc. v. U.S. Fidelity & Guaranty Co.,* 496 F.Supp. 1254, 1255 (D.Iowa 1980); *Fort v. Ralston Purina Company,* 452 F.Supp. 241, 242 (E.D.Tenn.1978).

*Parker v. Brown*, 570 F.Supp. 640, 642 (D.C. Ohio, 1983)

> While it is undoubtedly best to include all relevant evidence in the petition for removal and motion to remand, there is no good reason to keep a district court from eliciting or reviewing evidence outside the removal petition. We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction. We emphasize, as did the court in *Allen,* that "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Allen,* 63 F.3d at 1335.

*Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

## II. APPLICABLE FACTS

### A. <u>Allegations in the Complaint</u>

In pertinent part, the following allegations appear in the complaint:

11. On December 21, 2011, Tanner Hunter, while a student at the Leeds Alabama public High School, received a permanent spinal cord injury while participating in a wrestling tournament at St. Clair High School in Odenville, St. Clair County, Alabama.

12. As a result of the accident, Tanner Hunter has no use of his legs and[] a very limited use of his upper arm: a quadriplegic.

13. . . . Leeds High School, and every government funded public high school in the state of Alabama, pays the [AHSAA] a premium each year to purchase insurance . . . for all student athletes . . . in their school, to cover a multitude of benefits for their athletes and their families for insurance coverage for a catastrophic accident . . ..

14. . . . [Such insurance] was purchased from [Kennion Group] and/or [Academic Benefit] and/or [Preferred Health] and/or [Planned Benefit] and/or [the AHSAA] . . . and/or . . . Shepherd and/or . . . Thomason.

15. During Tanner Hunter's initial course of treatment in critical intensive care, the Hunter[s] were visited by a representative of AHSAA and [were] assured that insurance was in place to handle a multitude of expenses arising from Tanner's injury, covering both Tanner, and expenses that arise for parents in the event of such an accident including travel, earnings, training, and medical expenses . . ..

16. Leeds High School executed paperwork for the claim for the plaintiffs.

17. Steven and Christy Hunter were contacted and met with defendants . . . [Thomason] and . . . Shepherd from the Kennion Group who offered themselves in a claims representative capacity for the insurance referenced above.

18. Steven and Christy [Hunter] were told specifically by [Thomason] and Shepherd that expenses incurred for Tanner, including but not limited to medical not covered by insurance, [f]amily [t]ravel, [l]oss of [e]arnings, [f]amily [t]raining and other benefits that would be covered.

19. The insurance coverage described by [Thomason] and Shepherd would allow Tanner to seek additional immediate treatment necessary outside of his parents insurance coverage; to optimize the potential for a better recovery and current treatment; extra rehabilitation costs and expenses; and other potential medical treatments that would allow a better present and future outcome for Tanner hunter and his family.  This insurance coverage described by [Thomason] and Shepherd would have allowed the Hunter[s] to retain savings, wages [sic] and would have allowed them to better assist their child.  These benefits would have assisted Tanner directly.

20. The Hunter[s] gathered and submitted information to [Thomason] and Shepherd but were then told by [Thomason] that Tanner's injury[] was not considered to be permanent and catastrophic and additionally that since there was family coverage, only the initial Fifty Thousand Dollars ($50,000.00) of coverage already paid was available under any of the areas of the insurance.

21. The policy of insurance is not what the AHSAA represented as being purchased by AHSAA on behalf of Leeds High School and Tanner Hunter and Steven and Christy Hunter.

22. . . . [T]he policy of insurance is not insured by "Lloyds of London and Underwriters at Lloyds, Mutual of Omaha and other A or higher rated carriers" as stated in the policy.

23. The policy of insurance is not what [Thomason] and Shepherd represented to the Hunters.

24. The policy of insurance appears not to confer the benefits bargained for.

25. Due to the foregoing actions of the [d]efendants, the plaintiffs were caused to pay sums amounts [sic] that they would not have paid but for the statements of the defendants and/or insurance policy language.

26. Due to the foregoing actions of the [d]efendants, the plaintiffs were unable to obtain medical treatment that should have been afforded under the policy.

(Doc. 1-1 at 15-17).

### B. The Notice of Removal

The Notice of Removal notes:

15. As set forth in the Notice of Removal, AHSAA is a private agency founded in 1921 and organized by its member schools to regulate, coordinate, and promote the interscholastic athletic programs among its member schools. AHSAA contracted with Planned Benefit to provide accident coverage through a plan named "The Academic Benefit Trust" (hereinafter referred to as "The Plan"). A true and correct copy of The Plan entered into between AHSAA and Planned Benefit is attached to the Notice of Removal as Exhibit C. As stated in The Plan, the Managing General Agent (MGA) is Planned Benefit, the Managing General Underwriter (MGU) is Kennion Group, and the Third Party Administrator (TPA) is Preferred Health.

16. The Plan provides it is covered under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et. seq. Specifically, The Plan states in pertinent part:

> **Plan Administrator** - means the licensed Third Party Administrator that administers the plan and is responsible for its routine administration within the meaning of section 3(16) of ERISA. *This Plan has elected to be covered under ERISA*.
>
> **Plan Sponsor** - means the group that sponsors the plan and is responsible for its overall administration within the meaning of Section 3(16) of ERISA. *This Plan has elected to be covered under ERISA*.

([Doc. 1-3 at 5])(Emphasis added).

> **Conformity with State and Federal Statutes. *This Plan has elected to be covered under ERISA.*** Any provision of this Plan of Benefits which, on its effective date, is in conflict with the statutes of any state or federal regulation *is hereby amended to conform to the minimum requirements of those statutes*.

([Doc. 1-3 at 9])(Emphasis added).

> The Plan Sponsor is ABT. Participating Members in the Plan are the participating School, School District, System, Association or other School established and organized body recognized by the State in which it is located. The Plan Administrator is Preferred Health Alliance Corporation. *Both the Plan Sponsor AND the Plan Administrator are responsible for discharging all obligations that ERISA and its regulations impose* upon plan sponsors and plan administrators, such as delivering summary plan descriptions, annual reports, and other notices when required by law.

([Doc. 1-3 at 12]) (Emphasis added).

(Doc. 1 at 5-6) (emphasis added in original as noted).

### III. ANALYSIS

The case was removed by the defendants under the premise that this court has jurisdiction pursuant to 28 U.S.C. § 1331, which states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  While the complaint appears to set out only Alabama state law claims, in the Notice of Removal the defendants argue:

> 17.   Because The Plan is covered under ERISA, the Plaintiffs' claims for benefits under The Plan arise under ERISA Section 502(a)(1)(B). See 29 U.S.C. § 1132(a)(1)(B).
>
> 18.   ERISA is a federal statute and confers jurisdiction on this Court. Id. at § 1132(e).
>
> 19.   ERISA preempts all state laws related to a covered plan. 29 U.S.C. § 1144(a). The Eleventh Circuit has held that "state law claims relate to an ERISA plan for preemption purposes whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Hall v. Blue Cross Blue Shield*, 134 F. 3d 1063, 1065 (11 Cir. 1989). The Defendants contend that all of the Plaintiffs' claims are preempted by ERISA. However, to the extent that Plaintiffs' claims are not preempted by ERISA, this Court can exercise supplemental jurisdiction over the state law claims because these claims form part of the same case or controversy as the ERISA claims. 28 U.S.C. § 1367(a).

(Doc. 1 at 5-6).

ERISA preemption in the context of removal has been explained by the Eleventh Circuit as follows:

ERISA is one of only a few federal statutes under which two types of preemption may arise: conflict preemption and complete preemption. Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims. *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir.2006). This type of preemption arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that "relates to" an ERISA plan. 29 U.S.C. § 1144(a). Because conflict preemption is merely a defense, it is not a basis for removal. *Gully v. First Nat'l Bank*, 299 U.S. 109, 115–16, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936); *see also Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 n. 6 (11th Cir.2003) (stating that "defensive preemption ... provides only an affirmative defense to state law claims and is not a basis for removal").

Complete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule. It differs from defensive preemption because it is jurisdictional in nature rather than an affirmative defense. *Jones*, 457 F.3d at 1179 (citing Ervast, 346 F.3d at 1014). Complete preemption under ERISA derives from ERISA's civil enforcement provision, § 502(a), which has such "extraordinary" preemptive power that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Taylor*, 481 U.S. at 65–66, 107 S.Ct. at 1547. Consequently, any "cause[ ] of action within the scope of the civil enforcement provisions of § 502(a) [is] removable to federal court." *Id.* at 66, 107 S.Ct. at 1548.

Although related, complete and defensive preemption are not coextensive:

> Complete preemption is [ ] narrower than "defensive" ERISA preemption, which broadly "supersede[s] any and all State laws insofar as they ... relate to any [ERISA] plan." ERISA § 514(a), 29 U.S.C. § 1144(a) (emphasis added). Therefore, a state-law claim may be defensively preempted under § 514(a) but not completely preempted under § 502(a). In such a case, the defendant may assert

9

> preemption as a defense, but preemption will not provide a basis for removal to federal court.
>
> *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir.2005); *accord Ervast*, 346 F.3d at 1012 n. 6 ("Super preemption is distinguished from defensive preemption, which provides only an affirmative defense to state law claims and is not a basis for removal.").

*Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343-44 (11th Cir. 2009). As noted in *Conn. State Dental*, if complete preemption is not applicable, there is no jurisdiction. *Id.* ("Because the propriety of removal is at issue, our analysis concerns complete preemption.").

In 2011 the Eleventh Circuit set out the standard for complete ERISA preemption as follows:

> A federal district court has original jurisdiction over cases arising under federal law. 28 U.S.C. § 1331. Federal question jurisdiction generally exists only when the plaintiffs' well-pleaded complaint presents issues of federal law, but the complete preemption doctrine of ERISA creates an exception to that rule. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1344 (11th Cir.2009). Regardless of its characterization as a state law matter, a claim will be re-characterized as federal in nature if it seeks relief under ERISA. *Kemp,* 109 F.3d at 712.
>
> This court acknowledged in *Conn. State Dental* that the test articulated by the Supreme Court in *Aetna Health Inc. v. Davila,* 542 U.S. 200, 210, 124 S.Ct. 2488, 2496, 159 L.Ed.2d 312 (2004), should govern our inquiry into whether complete preemption under ERISA exists. 591 F.3d at 1345. The *Davila* test asks (1) whether the plaintiffs could have ever brought their claim under ERISA § 502(a) and (2) whether no other legal duty supports the plaintiffs' claim. *Id.*

> Step one of *Davila* entails two inquiries: first, whether the plaintiffs' claims fall within the scope of ERISA § 502(a), and second, whether ERISA grants the plaintiffs standing to bring suit. *Conn. State Dental,* 591 F.3d at 1350. ERISA § 502(a)(2) allows a civil action to be brought by "a participant, beneficiary[,] or fiduciary for appropriate relief under [29 U.S.C. § 1109]." 29 U.S.C. § 1132(a)(2). Section 1109 allows recovery against, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter." 29 U.S.C. § 1109(a). Fiduciary duties imposed by ERISA include "proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–3, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985).
>
> . . .
>
> Step two of *Davila* looks to whether the plaintiffs' claims implicate a duty independent of ERISA. In *Davila,* the Supreme Court found that although respondents' claim asserted a breach of duty under the Texas Health Care Liability Act (THCLA), the "interpretation of the terms" of the benefit plan "form[ed] an essential part of their THCLA claim," such that there was no independent claim to defeat preemption. 542 U.S. at 213, 124 S.Ct. at 2498. Similarly, in *Borrero v. United Healthcare of N.Y., Inc.,* appellants argued that their contractual duties were defined by state law, but this court found that even though the appellants' assertion was "true in the abstract," "the content of the claims necessarily require[d] the court to inquire into aspects of the ERISA plans because of the invocation of terms defined under the plans." 610 F.3d 1296, 1304 (11th Cir.2010). This court held that if some of a party's claims "implicate legal duties dependent on the interpretation of an ERISA plan," the claims are completely preempted. *Id.* at 1304–5.

*Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287-88 (11th Cir. 2011).

The Notice of Removal does not cite to or discuss the *Davila* two-part analysis.

11

It undertakes no analysis regarding "whether the plaintiffs' claims fall within the scope of ERISA § 502(a), [and/or] whether ERISA grants the plaintiffs standing to bring suit." *Ehlen Floor Covering*, 660 F.3d at 1287-88 (part one of the *Davila* analysis). It also does not "look[] to whether the plaintiffs' claims implicate a duty independent of ERISA." *Id.* (part two of the *Davila* analysis).

The defendants' argument section of their opposition to the motion to remand begins with a quote from *Conn. State Dental*. (Doc. 15 at 4). But, the quote is not to the part of that opinion that discusses or adopts the *Davila* analysis. The opposition then continues:

> The Hunters claim they are entitled to a remand of this case to state court because: (1) the Plan's choice of Alabama law outweighs its choice to be governed by ERISA and federal law; (2) the Plan's election to allow venue in state or federal court vitiates the Plan's determination to be governed by ERISA; (3) the Plan failed to properly file ERISA reports, thereby effectively waiving its election to be governed by ERISA; (4) the Plan's choice to be an "excess" plan for certain beneficiaries excludes it from ERISA; (5) the Plan utilizes "government funds" excluding the Plan from ERISA; and (6) there is no employer-employee relationship creating an ERISA plan. The Hunters fail to provide the Court with any legal authority supporting these arguments, other than references to the ERISA statutes themselves without further explanation or examination. In addition to the Hunters' failure to provide this Court with any legal authority for their arguments, the Motion to Remand should be denied because each of the asserted arguments is incorrect. Each argument is discussed below.

(Doc. 15 at 4-5). Thereafter, the defendants, over the next 14 pages of their brief,

address those specific issues.  (Doc. 15 at 5-18).  Nowhere in those pages is the *Davila* analysis mentioned or discussed.  <u>The burden of establishing subject matter jurisdiction for the purposes of removal to this court is on the removing defendants</u>. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (emphasis added) ("Because this case was originally filed in state court and removed to federal court by Best Buy, Best Buy bears the burden of proving that federal jurisdiction exists."). The court will not attempt to satisfy their burden for them by opining as to whether some unidentified portion of the argument made in the opposition brief might relate to some unknown portion of the *Davila* analysis.

### IV. CONCLUSION

The defendants have failed to satisfy their burden.  In keeping with the principle that "all doubts about jurisdiction should be resolved in favor of remand to state court," *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012), by separate order the motion to remand will be **GRANTED**, and this case will be **REMANDED** to the Circuit Court of St. Clair County, Alabama.

**DONE** and **ORDERED** this 23rd day of April, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge